1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZONA S.,

                         Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

CASE NO. 2:20-cv-00002-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff appeals the ALJ's decision finding her not disabled. The ALJ found degenerative disc disease of the lumbar, thoracic and cervical spine, obesity, gastroesophageal reflux disease (GERD), asthma, obstructive sleep apnea, shoulder impairment, major depressive disorder and osteoarthritis are severe impairments; Plaintiff has the residual functional capacity (RFC) to perform less than the full range of light work subject to several physical, postural, environments and mental limitations; and she can perform past relevant work and is therefore not disabled. Tr. 20-30.

Plaintiff contends the ALJ misevaluated the medical evidence and her testimony and failed to develop the record as the Appeals Council ordered on remand. As relief she asks the Court to remand the case for an award of benefits.  Dkt. 19 at 1-2. The Court agrees the ALJ harmfully erred but disagrees benefits should be awarded at this juncture. Accordingly, the Court

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 1

1   **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further

2   administrative proceedings under sentence four of 42 U.S.C. § 405(g).

3                                    **DISCUSSION**

4   **A.      The Medical evidence.**

5          Plaintiff contends the ALJ misevaluated the opinions of Carl Janzen, M.D. and Marlon

6   Balauag, M.D.[1]

7          **1.      Dr. Janzen**

8          The ALJ noted Dr. Janzen completed a DSHS form evaluation in which he opined

9   Plaintiff can stand ten minutes at a time; walk twenty feet in two hours; sit one hour over a two

10  hour period in an eight hour workday; lift no more than ten pounds; and work no more than ten

11  hours per week.  Tr. 28.

12         The ALJ rejected Dr. Janzen's opinions as inconsistent with treatment records the ALJ

13  deemed "not reflective" of the limitations the doctor assessed because "examinations and

14  imaging was generally normal." *Id.*  Substantial evidence does not support this finding.  Dr.

15  Janzen's treatment records indicate Plaintiff has long suffered from chronic pain complaints the

16  doctor opined were related to her back and neck problems, which were objectively established by

17  imaging results and clinical examinations.  *See, e.g.*, Tr. 838 (noting chronic pain, some increase

18  in paresthesia in her feet; chronic pain "spinal stenosis and facet arthropathy; pain agreement);

19  Tr. 840 (low back pain radiating into both legs, L-5 disc compression based on MRI results;

20  numbness and tingling of right arm; arm and shoulder pain); Tr. 843 (pain worsening with

21  increased lower back pain and radiation into left leg with paresthesia; Plaintiff had ESI previous

22  fall, which did not help; pain interferes with daily activities at a 4/10); Tr. 848 (noting increase in

23

---

[1] The ALJ refers to Dr. Balauag as Dr. Balaug. Tr. 28.

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 2

Vicodin dosage for pain); Tr. 849 (returning of cervical radiculopathy symptoms with numbness in legs and arms); Tr. 855 (walking normally, with normal ROM but "[c]hronic pain" requires an "increase [in] hydrocodone [dosage]"; referrals for lumbar and cervical radiculopathy; knee pain); Tr. 856 (pain is stable); Tr. 866 (low back pain with bilateral radiation into both legs for past four days); Tr. 867 (poor ROM returned; pain is moderate); Tr. 870-71 ("back pain;" thoracic MRI is normal; degenerated disks but no stenosis; facet osteoarthritis, with bilateral mild to moderate narrowing of discs); Tr. 874 (MRI reviewed with Plaintiff; might need narcotics); Tr. 879 (positive musculoskeletal findings; decreased sensation is all in toes and heels; lumbar paraspinal tenderness present with back pain and peripheral neuropathy); Tr. 880 (citing no improvement in leg pains and that Gabapentin makes Plaintiff sleepy during the day); Tr. 887 (chronic recurrent abdominal pain associated with pancreatitis); Tr. 891 (noting pancreatic pain is gone but back pain requires Plaintiff to take hydrocodone); Tr. 894 (experiencing leg pain); Tr. 899 (continuing pain for over 4 months – Doctor suggests instituting formal chronic pain agreement; chronic back pain with spinal stenosis; neck pain with chronic right sided arm pain with paresthesia for months/years); Tr. 899 (pain is a 7 out of 10); and Tr. 901 (interference of pain with daily activities scored at a 4 out of 10).

Thus, Dr. Jantzen's treatment records show Plaintiff suffered chronic pain, her pain waxed and waned, and that Plaintiff's complaints were caused by her neck and spinal issues. The record thus paints a very different picture than the one the ALJ painted. The ALJ's finding portrays Plaintiff's examinations and imagining as "generally normal," but Dr. Janzen's records establish Plaintiff's examinations were frequently not normal, that she had persistent chronic pain requiring narcotic pain medication, and that imaging revealed abnormal findings of the spine.

1   The Court concludes substantial evidence does not support the ALJ's rationale, and the ALJ

2   erred.

3          The ALJ also rejected Dr. Janzen's opinion because the doctor "did not explain these

4   extreme limitations other than to list the [Plaintiff's] diagnoses." Tr. 28.  The ALJ need not

5   accept a treating doctor's opinion that is brief, conclusory, and inadequately supported by clinical

6   findings. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation omitted). In *Ford*, the Court

7   of Appeals affirmed the ALJ's rejection of a treating physician opinion because it "lacked

8   explanation" and his opinion was contradicted by the record. *Id.* at 1155. However, in contrast to

9   *Ford*, while Dr. Janzen's report did not provide an explanation for the opinions, his opinions are

10  not contradicted or inconsistent with his treatment records. As noted above, Dr. Janzen's opinion

11  contains abnormal examination findings, accounts of plaintiff's chronic pain, and the need for

12  narcotic medications. Because Dr. Janzen's opinion is consistent with his extensive treatment

13  records, the ALJ erred in rejecting the opinions as lacking in explanation.

14         The Court accordingly concludes the ALJ erred in rejecting Dr. Jantzen's opinions. The

15  error was harmful because the RFC determination fails to account for all limitations assessed by

16  the doctor.

17         **2.  Dr. Balauag**

18         Plaintiff also contends the ALJ misevaluated Dr. Balauag's opinion. The ALJ discounted

19  Dr. Balauag's opinion Plaintiff was "incapable of even sedentary work." Tr. 28. In rejecting Dr.

20  Balauag's opinions, the ALJ first stated the doctor "had been treating the claimant for a year and

21  a half." Tr. 28.  This is not a valid reason. While an ALJ can consider the length of treatment a

22  doctor provides in weighing the doctor's opinions, it is unreasonable to suggest a treating

23  relationship of one and half years is grounds to reject the opinion. *See Soper v. Astrue*, 2011 WL

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 4

3205412, at *7 (July 26, 2011) (ALJ erred in rejecting treating physician's opinion when doctor had treated plaintiff for one year). This case does not involve a treating doctor who barely knew plaintiff or a situation where the ALJ discounted Dr. Balauag's opinion in favor of a treating doctor who provided plaintiff for a longer time period and more intensively. Dr. Balauag's was also largely consistent with Dr. Jantzen's opinions. The Court accordingly concludes the ALJ erred.

The ALJ also rejected Dr. Balauag's opinion on the grounds "he provided little explanation beyond the list of conditions." Tr. 28-29. In support, the ALJ stated the doctor opined Plaintiff required a 5-10 minute break every 30-40 minutes "but only referred to the claimant's pain"; that the doctor opined Plaintiff should not engage in "climbing, despite the fact the claimant lived on the second floor of her apartment building"; and the doctor included a number of mental limitations without any basis for such limitations. Tr. 29. Substantial evidence does not support these findings.

As the ALJ acknowledged, Dr. Balauag opined Plaintiff's pain limited her to working for short periods of time before needing a break. But, the ALJ provides no explanation why Dr. Balauag is incorrect in opining Plaintiff's pain limits her in this way. Because "conclusory reasons will not justify an ALJ's rejection of a medical opinion," the ALJ's unexplained explanation for rejecting Dr. Balauag's opinion is erroneous. *Regennitter v. Comm'r Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir.1999).

The ALJ's finding that Dr. Balauag's opinion Plaintiff should not engage in "climbing" as inconsistent with Plaintiff's residence in a second-floor apartment misapprehends the doctor's opinion. Tr. 29. Dr. Balauag provided two assessments. The first noted Plaintiff cannot climb ladders and should "rarely climb stairs," Tr. 1394; the second noted Plaintiff cannot climb stairs

and can rarely climb ladders.  Tr. 1398.  The second assessment is obviously a typographical

error given the first assessment, and the irrationality of being able to climb ladders and not stairs.

The only rational way to interpret Dr. Balauag's two reports is he intended to limit Plaintiff to

rarely climbing stairs. Contrary to the ALJs finding this limitation is consistent with Plaintiff

living in a second-floor apartment. This is because Plaintiff testified, she rarely left her

apartment, and hence rarely climbed stairs. Tr. 161.

The ALJ's rejection of Dr. Balauag's opinion Plaintiff would be off task as "made without

explanation" fails to account for the doctor's findings that Plaintiff symptoms include "fatigue,

sleeping difficulties," and that her medications cause "dizziness, drowsiness." Tr. 1396-97.  The

ALJ's finding is accordingly not supported by substantial evidence.

Finally, the ALJ rejected Dr. Balauag's opinions because the doctor "listed conditions I

did not find rose to the level of constituting severe impairments," such as acute pancreatitis,

esophagus problems, insomnia, gastroparesis, atrial fibrillation, hypertension, chronic pain,

nausea and angina.  The ALJ erred because he found these impairments are medically

determinable, Tr. 20,  and to determine plaintiff's RFC, the ALJ is required to consider all

impairments, including non-severe medically determined impairments, related symptoms such as

pain, and all relevant medical evidence.  20 CFR 404.1545(a). Additionally, chronic pain is a

major component of Plaintiff's disability claim. The ALJ found chronic pain is medically

determinable, Tr. 20, and her medically determinable impairments could reasonably be expected

to cause her alleged symptoms. Hence the ALJ was required to consider her pain complaints

rather than reject opinions based upon such complaints.

The ALJ also noted Dr. Balauag listed conditions the ALJ deemed not medically

determinable: neuropathy and anxiety. Tr. 29.  As a treating doctor, one would expect Dr.

1   Balauag to list all medical conditions contained in Plaintiff's record. The inclusion of all

2   conditions thus is a not a reasonable basis to reject all of the doctor's opinions. Further, Dr.

3   Balauag did not opine Plaintiff was limited due to neuropathy and anxiety. Rather, the doctor

4   diagnosed plaintiff with  chronic pain, lumbar arthropathy, neuropathy, AFIB, GERD, and major

5   depression, Tr. .1392 that he opined caused low back pain, dizziness, fatigue, weakness,

6   numbness, chest and epigastric pain, palpitations, limited flexion and extension of the lower back

7   and epigastric tenderness.

8          The Court accordingly concludes the ALJ erred in discounting Dr. Balauag's opinions.

9   The error was harmful because the RFC determination fails to account for all limitations assessed

10  by the doctor.

11  **B.      Plaintiff's Testimony**

12         The ALJ did not find malingering and thus was required to making specific findings

13  stating clear and convincing reasons supported by substantial evidence to reject plaintiff's

14  testimony. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). The ALJ rejected Plaintiff's

15  testimony as inconsistent with the "longitudinal record," Tr. 24. In support, the ALJ first found

16  Plaintiff's claims of  "disabling physical limitations . . . are out of proportion with the objective

17  evidence." Tr. 24.  However, an ALJ may not reject a claimant's subjective complaints based

18  solely on lack of objective medical evidence.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.

19  2004) (quoting *Rollins v. Massanari,* 261 F.3d 853, 856-57 (9th Cir.2001).

20         The ALJ went further and found imaging results of Plaintiff's spine were "benign"

21  because they showed "nerve root compromise"  despite allegations of radiation of pain into

22  [Plaintiff's] legs and feet," and "only mild findings with no significant foraminal encroachment

23  or canal stenosis" of the cervical spine.  Tr. 24. However, as noted above, Plaintiff's treating

ORDER REVERSING AND REMANDING FOR FURTHER
PROCEEDINGS - 7

doctors opined Plaintiff's imagining results are abnormal and cause chronic pain among other things.

The ALJ found Plaintiff's exam findings indicated normal strength, and range of movement.  But these findings do not necessarily contradict her pain complaints. TR. 25. For example, one could have normal strength but nonetheless still suffer from chronic pain. Additionally, no doctor equated normal strength as inconsistent with chronic pain.

The ALJ noted Plaintiff's exams indicated a "lack of acute distress. " But Plaintiff's records do not show she was not in distress. Rather they show she suffers from persistent and chronic pain. *Compare* Tr. 798 (cited by ALJ for "no acute distress"), *with* Tr. 795 (noting Plaintiff's "longstanding history of chronic pain); *compare* Tr. 1437 (no acute distress), *with* Tr. 1433 (Plaintiff's chief complaint in presenting is chronic pain and a need for pain management); *compare* Tr. 1448 ("no acute distress" as listed under the physical exam) *with* Tr. 1444 ("Chronic and persistent left shoulder pain" and "worsening pain on the joint and scapula."); *compare* Tr. 1479 (no distress noted on physical exam) *with* Tr. 1476 ("Report[ing] pain in [Plaintiff's] neck and back are gradually getting worse); Tr. 1433-38 (noting chronic pain in mid and lower back without much relief from morphine; average pain intensity at a 7/10 between 2014-2015); Tr. 1475-80 (presenting with a chief complaint of pain; reporting increase in neck and back pain; still taking narcotics for pain; average pain intensity at a 7/10 between 2016-2017); Tr. 800 (worsening of back pain, radiating into legs; standing, walking, and sitting all worsen the pain, while laying down relieves it).

The ALJ also discounted Plaintiff's testimony about how long she could walk or stand on the grounds a consultative examination found unremarkable gait, and she could tandem walk and walk heel to toe without difficulty. Tr. 25. But Plaintiff did not claim she could not perform these

actions. Rather she claims she cannot stand or walk for as long as the ALJ found – six hours in an eight-hour day. The evidence the ALJ cites does not contradict Plaintiff's testimony.

The ALJ also found the treatment Plaintiff receives is not indicative of the severe limitations alleged. The ALJ acknowledged Plaintiff is prescribed several medication including gabapentin and narcotics and received injections. Tr. 25. The ALJ points to no evidence that Plaintiff's doctors believed she does not suffer from chronic and severe pain and that her treatment is commensurate with only mild and non-severe pain. The ALJ further points to no evidence that there are additional treatments that Plaintiff could have but declined to accept that would effectively resolve her chronic pain. Hence the suggestion that Plaintiff's treatment contradicts her complaints is not supported by substantial evidence.

The ALJ also noted in mid-2017 "she was tapered off narcotics," suggesting Plaintiff's chronic pain was either not severe or was resolved by that time. Tr. 25. Substantial evidence does not support the finding. Plaintiff's records show that in June 2017, Dr. Balauag noted that based upon pain management recommendations we "will start her gradual taper off the narcotics." Tr. 1487. But by October 2017 Plaintiff's records showed her pain had worsened due to the taper. Dr. Balauag noted in a chronic pain follow-up record "patient is suffering from severe pain since we steadily cutback on her pain meds. . . . she reports that the pain in her neck and midback are worse overall." Tr. 1501.

The ALJ also noted Plaintiff mentioned the use of a walker. Tr. 25. The ALJ appears to reject Plaintiff's testimony because no assistive ambulatory device has been prescribed and Plaintiff has been able to walk without a device even when her pain is bad. *Id.* The ALJ acknowledged that a walker was "ordered" by physical therapy; the finding no device was every prescribed is not supported. Additionally, Plaintiff did not testify that she needed a walker every

day in order to ambulate, though she expressed fears that she might need a device in the future. Thus, the lack of a prescribed walker does not contradict her testimony. The ALJ accordingly erred

The ALJ also rejected Plaintiff's testimony as inconsistent with her activities because "she was moving a heavy television with her daughter in 2013." Tr. 26.  But the medical record shows Plaintiff's one attempt to help her daughter was a failure and resulted in Plaintiff falling, suffering more severe pain and going to the emergency room. Tr. 1303. The ALJ also noted in 2017 Plaintiff helped friends clean up mold. Ostensibly the ALJ found this contradicts Plaintiff's claims of being sensitive to allergens. The record does not support such as finding because after helping her friends, Plaintiff ended up with a sinus infection, cough and sore throat.  Tr. 1487.

Finally, the ALJ discounted Plaintiff's testimony about limitation flowing from her abdominal or gastrointestinal conditions, asthma, COPD, sleep apnea, heart issues and mental conditions such as depression. Tr. 26-27. Plaintiff does not specifically challenge the ALJ's findings and the Court accordingly will not disturb the ALJ's determinations.

## C.   Compliance with Appeals Council Remand Order

Plaintiff contends the ALJ's decision should be reversed because the ALJ failed to comply with the Appeals Council's order of remand. Dkt. 19 at 17. The Court may not reverse a final disability decision based upon an ALJ's alleged failure to follow a remand order.  *See Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1136–1138 (9th Cir. 2011); *Ramirez v. Shalala*, 8 F.3d 1449, 1451 (9th Cir. 1993). The Court accordingly rejects the argument.

**CONCLUSION**

Plaintiff seeks a remand for an award of benefits.  The Court has the discretion to remand the case for further proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir. 2002) (citation omitted). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded for further proceedings. *Id.* at 1076.

Only in rare circumstances should a case be remanded for benefits. *See Treichler v. Colvin,* 775 F3d 1090 (9th Dec 24, 2014). The Court concludes that this is not that rare case. The ALJ erred in evaluating evidence and the ALJ should reassess and reweigh the evidence. This is a task reserved for the commissioner and best performed by a fact finder.  Accordingly, as there are outstanding issues to resolve, and further proceedings would be useful, the Court concludes the matter should be remanded for further administrative proceedings.

For the foregoing reasons, the Commissioner's decision is **REVERSED,** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g)

On remand, the ALJ shall reevaluate plaintiff's testimony and the opinions of Drs. Jantzen and Balauag, develop the record and redetermine Plaintiff's RFC as needed, and proceed to the remaining steps as appropriate.

DATED this 4th day of December 2020.

BRIAN A. TSUCHIDA
United States Magistrate Judge